IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRANDON BERNARD, | ) | |
| | ) | |
| Petitioner, | ) | No. 2:20-CV-616 |
| v. | ) | |
| | ) | CAPITAL CASE |
| T.J. WATSON, | ) | EXECUTION SCHEDULED FOR |
| Warden, Federal Correctional | ) | DECEMBER 10, 2020 |
| Complex (FCC) Terre Haute, | ) | |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S RESPONSE TO ORDER FOR SUPPLEMENTAL BRIEFING**

The Court requested that the parties submit supplemental briefing addressing "the proper test for determining whether a particular claim satisfies" 28 U.S.C. § 2255(e)'s saving clause "[a]ssuming that *Brady* and *Napue* claims based on newly discovered evidence and directed at the prisoner's sentence may, under some circumstances, satisfy" that clause. Doc. 14 at 1. The Court also asked whether the proper test is "analogous to § 2255(h)(1)'s test for claims directed at a prisoner's conviction." *Id.* Assuming (without conceding) that § 2255 can be structurally inadequate to raise *Brady* and *Napue* claims in certain circumstances, the Court still must ask whether the claim, if proven, would establish the prisoner's actual innocence or categorical ineligibility for his sentence. Although the standards differ, § 2255(h)(1) also supports a narrow reading of the saving clause. Bernard cannot show a likelihood of success on the merits of his § 2241 petition, and this Court should deny his motion for a stay of execution.

1

I.    **The saving clause requires both a structural defect in § 2255 and a claim that indicates actual innocence or categorical ineligibility for the sentence imposed.**

To avail himself of the saving clause under Seventh Circuit precedent, a prisoner must make "a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem." *Purkey v. United States*, 964 F.3d 603, 615 (7th Cir. 2020). That standard includes two components, although the Court has not always parsed them out. First, there "must be some kind of structural problem with section 2255 before section 2241 becomes available." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc). Second, the claim asserted must go to "the fundamental legality of [the prisoner's] conviction and sentence." *Id.* (quoting *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998)). The first question is purely procedural, asking whether there was something the claim "as a structural matter cannot be entertained by use of the 2255 motion." *Id.* at 1139. The second question looks at the nature of the right asserted, whether it is "a fundamental problem," *Purkey*, 964 F.3d at 615, or "fundamental defect," *Davenport*, 147 F.3d at 611.

The first component of this test is often enough to dispose of a claim that the saving clause is satisfied. In the government's view, it is sufficient here. There is ordinarily no structural problem with § 2255 that makes it inadequate as a vehicle to raise *Brady* and *Napue* claims. Such claims are cognizable in a first § 2255 motion, and they can be raised in a second or successive § 2255 motion if they are certified to involve "newly discovered evidence that, if proven . . . , would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant

2

guilty of the offense."  28 U.S.C. § 2255(h)(1). "It is not enough that proper use of the statute results in denial of relief." *Purkey*, 964 F.3d at 615. Nor is it enough that "§ 2255(h) blocks a successive petition." *Unthank v. Jett*, 549 F.3d 534, 535 (7th Cir. 2008). Instead, there must be something "structurally inadequate or ineffective about section 2255 as a vehicle to make [the prisoner's] arguments." *Purkey*, 964 F.3d at 617. And there is no such structural problem here.

This Court's briefing order, however, asks the parties to "[a]ssum[e] that *Brady* and *Napue* claims based on newly discovered evidence and directed at the prisoner's sentence may, under some circumstances, satisfy" the saving clause. Doc. 14 at 1. As the government understands the order, the Court asks the parties to assume that the first, structural component of the saving clause could be satisfied. In that case, "the proper test for determining whether a particular claim satisfies the saving clause," *id.*, is whether the claim asserted satisfies the second component. That is, whether the prisoner's claim, if successful, would establish his actual innocence or render him categorically ineligible for the sentence imposed.

Although many of the Seventh Circuit's decisions rejecting reliance on the saving clause have focused on the clause's first, structural requirement, the court has also addressed the second component in cases where it has found the saving clause to be satisfied. The Seventh Circuit has found § 2255 to be inadequate or ineffective only in three situations: where a retroactive case of statutory interpretation establishes that the prisoner has "been imprisoned for a nonexistent offense," *Davenport*, 147 F.3d at 611, where the prisoner had no prior opportunity to argue that his sentence would violate "a

3

judicially-enforceable treaty obligation," *Garza v. Lappin*, 253 F.3d 918, 923 (7th Cir. 2001), and where newly discovered evidence demonstrates that "the Constitution categorically prohibits a certain penalty," *Webster*, 784 F.3d at 1139. Although these cases do not "create rigid categories delineating when the safety valve is available," *Purkey*, 964 F.3d at 614, "they illustrate the limited kinds of structural defects that justify savings-clause relief," *Bourgeois v. Watson*, 977 F.3d 620, 638 (7th Cir. 2020), *petition for cert. filed*, No. 20-6500 (U.S. Dec. 2, 2020). What all three cases have in common is that (a) a structural problem with § 2255 prevented the prisoner from bringing a § 2255 motion *and* (b) the error alleged involved either actual innocence or a categorical bar on the sentence imposed.

In *Davenport*, the structural problem that the Seventh Circuit perceived with § 2255 was that Congress provided a mechanism for raising constitutional claims in a second or successive § 2255 motion, but not statutory claims. *Davenport*, 147 F.3d at 610. As the Seventh Circuit later explained, its concern that "Congress may have overlooked the possibility that new and retroactive statutory decisions could support collateral review," led it to hold in *Davenport* that "for this small class of situations § 2255 is 'inadequate or ineffective to test the legality of [the] detention.'" *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002). *Davenport* and subsequent cases made clear, however, that this rule did not apply to just any claims. In *Davenport*, the court held that the defendant could seek judicial relief only for "so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *Davenport*, 147 F.3d at 611. The court later described this type of error as one that "establishes the

4

petitioner's actual innocence." *Taylor*, 314 F.3d at 835; *see id.* at 836 (observing that the defendant's claim "does not illuminate any structural defect in § 2255 *or* present any fundamental error equivalent to actual innocence" (emphasis added)).

In *Garza*, the structural problem perceived by the Seventh Circuit was that it was "literally impossible" for the prisoner to raise his treaty-based claim until he prevailed in the Inter-American Commission on Human Rights.  *Garza*, 253 F.3d at 923. And he could not bring a claim before the Commission until he had exhausted his national remedies (including those provided by § 2255). *Id.* at 920. Moreover, the prisoner's claim, if proven, would establish that the United States' treaty obligations barred his death sentence. *Id.* at 920, 923.

In *Webster*, the prisoner sought § 2241 relief based on newly discovered evidence supporting his claim that he was intellectually disabled and therefore ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). The Seventh Circuit, sitting en banc, held that Congress could not have "contemplated" the problem of constitutional ineligibility for the death penalty at the time it adopted § 2255(h)'s limits on second or successive § 2255 motion because "the Supreme Court had not yet held it unconstitutional to execute either an intellectually disabled person (*Atkins*) or a minor." *Webster*, 784 F.3d at 1138. The court therefore reasoned that "the narrow set of cases presenting issues of constitutional ineligibility for execution" was a "lacuna in the statute" that allowed resort to the saving clause. *Id.*

Consistent with its rationale, *Webster* was careful to state its holding in terms of *categorical* bars on the death penalty. *See Webster*, 784 F.3d at 1125 ("categorical

ineligibility for the death penalty"), 1137 ("a particular sentence [i]s *constitutionally* forbidden"), 1137 ("constitutional ineligibility for execution"), 1139 ("the Constitution categorically prohibits a certain penalty"), 1140 ("categorically ineligible for the death penalty"); *see also id.* at 1141 (noting that opinion's reasoning would extend to another categorical limitation on the death penalty—the prohibition on execution minors recognized in *Roper v. Simmons*, 543 U.S. 551 (2005)).  But *Webster*'s rationale cannot be extended to constitutional claims that do not establish categorical ineligibility for a sentence.

Assuming that § 2255 could be structurally inadequate to raise certain *Brady* and *Napue* claims, a few such claims might conceivably satisfy the Seventh Circuit's second requirement for saving clause relief. The government could, for example, violate *Brady* by suppressing evidence showing that the defendant was intellectually disabled or was a minor at the time of the offense, facts that would make him constitutionally ineligible for the death penalty.[1] *See Webster*, 784 F.3d at 1140-41. Similarly, it could violate *Napue* by knowingly presenting false evidence that the defendant was an adult or not intellectually disabled. And the government's suppression of evidence or use of false evidence related to the defendant's *statutory* eligibility for the death penalty could possibly implicate *Davenport*'s actual-innocence rationale.

---

[1] The evidence in *Webster* was unavailable to the defense through alleged failings by the Social Security Administration, not as a result of suppression by the prosecution team. *Webster*, 784 F.3d at 1140.

But Bernard's *Brady* and *Napue* claims do not rise to this level. Bernard does not argue that the allegedly suppressed evidence shows that he was convicted of a "nonexistent offense," *Davenport*, 147 F.3d at 611, or was "categorically ineligible for the death penalty," *Webster*, 784 F.3d at 1140. Instead, he claims that the government suppressed evidence (and introduced false evidence) relating to his role in the gang that might have affected (a) the jury's consideration of the non-statutory aggravating factor of future dangerousness and (b) the jury's weighing of the aggravating and mitigating factors. *See* Doc. 2 at 19-20.  Even if proved, those claims would not establish categorical ineligibility for the death penalty, as the jury found other aggravating factors that would independently render Bernard death-eligible, and the court could lawfully have imposed a capital sentence.  Extending the safety valve to such claims would go well beyond what the Seventh Circuit has done in *Davenport*, *Garza*, and *Webster* and would be inconsistent with the rationale in those cases.

## II.  Section 2255(h)(1) reinforces the conclusion that Congress sought to limit the availability of the saving clause.

The Seventh Circuit's second requirement of saving clause relief differs somewhat from § 2255(h)(1)'s standard for second or successive motions, which asks whether newly discovered evidence, if proven, "would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2255(h)(1). Section 2255(h)(1)'s standard is fact-specific, whereas the Seventh Circuit asks a more categorical question under the saving clause—namely, whether the claim would establish actual innocence or categorical ineligibility

for the death penalty. And any application of the saving clause to a claim based on new evidence would necessarily involve a prisoner who cannot independently satisfy § 2255(h)(1)'s standard, because any prisoner who could satisfy it would be entitled to raise his claim in an authorized second or successive § 2255 motion and have no need to invoke the saving clause.

Despite these differences, § 2255(h)(1) is a helpful reference point for understanding the saving clause. That provision demonstrates that Congress sought to limit second-in-time collateral attacks based on newly discovered evidence to claims that, if proven, would show actual innocence by clear and convincing evidence. This demanding standard applies even to directly exculpatory evidence, such as evidence that another person committed the offense. In Bernard's view, however, the fact that the government allegedly suppressed evidence in violation of *Brady* allows him to bring a § 2241 petition on the basis of evidence that *might* have affected the jury's penalty-phase decision. *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (defining materiality as a "reasonable probability" of a different result). That result is hard to square with Congress's manifest intent to limit the availability of relief after a prisoner has exhausted his first round of § 2255 review.

Both the nature of collateral review and § 2255's structure indicate that a prisoner must satisfy a progressively higher burden at each successive stage of collateral review. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks omitted). Thus, "not . . . every asserted error of law can be raised on a § 2255 motion."

8

*Davis v. United States*, 417 U.S. 333, 346 (1974). Instead, the claimed error must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (internal quotation marks omitted). And once a defendant has exhausted an initial round of collateral review, the burden becomes even higher. The prisoner may not bring a second or successive motion unless it is based on newly discovered evidence that meets § 2255(h)(1)'s stringent standard or on a new rule of constitutional law made retroactive by the Supreme Court, § 2255(h)(2).[2] And only when § 2255 is structurally "inadequate or ineffective to test the legality of his detention" may a defendant resort to § 2241. 28 U.S.C. § 2255(e). These limitations on each progressive stage of collateral review explain why the Seventh Circuit has allowed resort to the saving clause only for fundamental errors rising to the level of actual innocence or categorical ineligibility for the sentence imposed. Because Bernard's claims do not rise to that level, he cannot show a substantial likelihood of success on the merits.

---

[2] The retroactivity standard under § 2255(h)(2) is itself stringent, requiring either a "[n]ew substantive rule[ ]," *i.e.* a "constitutional determination[ ] that place[s] particular conduct or persons covered by the statute beyond the State's power to punish," *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2003) (emphasis omitted), or else a watershed rule of criminal procedure, *i.e.* one that "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding," *Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (internal quotation marks omitted).

## CONCLUSION

This Court should deny Bernard's stay motion.

> Respectfully submitted
> JOHN C. CHILDRESS
> Acting United States Attorney
>
> By: <u>s/ Joseph H. Gay, Jr.</u>
>      JOSEPH H. GAY, JR.
>      Special Assistant United States Attorney
>      601 NW Loop 410, Suite 600
>      San Antonio, Texas 78216
>      (210) 384-7100
>      joseph.gay@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court

for the United States District Court for the Southern District of Indiana using the

CM/ECF system on December 4, 2020. I certify that all participants in the case are

registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Joseph H. Gay, Jr.
JOSEPH H. GAY, JR.